**In the matter of the petition of the inhabitants of the borough of Middleport to change the limits of said borough.**

This was an application by sundry inhabitants of the borough of Middleport, to change the limits of said borough by extending the same, taking in about 630 acres of uninhabited land within the limits of the neighboring township of Blythe.   On July 7, 1871, the petition was approved by the grand jury, and affirmed by the Court Oct. 2, 1871. On July 3, 1873, on application of Blythe township, and proof of want of notice to said township of the proposed change, the Court set aside the decree of affirmation and referred the petition back to the grand jury of July Term, 1872, for report thereon.   Approved by the grand jury on the 5th of July, 1872.

6th July, 1872.   Exceptions filed by Blythe township.   The matter was argued on the 7th of December, 1872.

*O. P. Bechtel* for petitioners, *Jas. Ellis* for exceptants.

Dec. 18, 1872, the Court delivered the following opinion :

GREEN, J.—The exceptions to the confirmation of the report of the grand jury are five in number, but it will not be necessary to consider them *seriatim*.

The borough of Middleport was incorporated by act of the Legislature, passed the 14th of April, 1859. No special provisions are to be found in the act giving any authority or prescribing any mode of changing the limits of the borough. If any change is therefore to be made, authority for it must be found in the general laws of the Commonwealth regulating boroughs, and to which the borough of Middleport may claim the benefit. In the absence of such authority, only an act of the Legislature can change the limits of the borough.

The general borough law of 3d April, 1851, (and to the powers conferred by the same, all boroughs thereafter incorporated are entitled,) establishes but one method of enlarging the limits of a borough. That is by ordinance of the borough upon the petition of twenty or more freehold owners of lots or out-lots or tracts lying adjacent to the said borough. This evidently contemplates the enlargement of the limits of a borough, for the purpose of conferring upon inhabitants residing without the limits the advantages and benefits to be derived from a borough organization. Under this act no enlargement could be made, unless the land to be added was occupied and resided upon by not less than twenty persons who had petitioned to the town council for that purpose. The section can confer no authority to enlarge the limits of the borough of Middleport as at present applied. The signers to the petition are all residents of the borough of Middleport, there is not a single resident upon the territory proposed to be added, and the authority to enlarge by this section is conferred, not upon the Court, but upon the Burgess and Town Council. These are the reasons why this proceeding to change the borough limits cannot be sustained under the act of 3d April, 1851.

It is claimed that this proceeding may be sustained under the 3d section of the act of 1st April, 1834. This act gives to the Courts of Quarter Sessions power to incorporate boroughs upon application by petition and approval by the grand jury, and the 3d section of the act prescribes the method to be pursued. The same section further provides that "the same proceedings shall be had on an application to change the limits of any borough incorporated under this act, and the Courts aforesaid shall have full power to decree such alteration as may be needful."

Can the petitioners claim the benefit of this act? If they cannot, then the only method left to them to procure the coveted extension is by act of Assembly, as was done in the year 1861, but two years after the original act of incorporation, when the Legislature passed a law changing and enlarging the original limits. But an insuperable obstacle to the power of the Courts to change the limits of the borough of Middleport

under the act of 1834, lies in the fact that the exercise of the power is expressly limited to boroughs incorporated under that act. The borough of Middleport was not incorporated under that act, but by special act of the Legislature in 1859, and it must therefore follow that it cannot claim the benefit of the act of 1834 for the purpose of changing its limits. This being the case, this proceeding to enlarge the limits of the borough must be disaffirmed and set aside.

But even if the Court had a clear authority to change the limits of the borough under the act of 1834, I cannot think it would be just to do so. as there is not a single inhabitant on the proposed extension, and its soil is wild and uncultivated. The main reason urged by the petitioners is that it is needed for the purpose of increasing the taxable property of the borough, that the present taxable property of the borough does not yield more than sufficient school tax to keep the schools open nine months in the year, without providing anything to keep the school buildings in repair, and that they are obliged to assess a tax of eighteen mills on the dollar to accomplish this, five mills more than is allowed by law for ordinary school purposes. This is undoubtedly a hardship for which some remedy should be found. But in applying the remedy I do not think that the neighboring township of Blythe should be injured just as much as Middleport would be benefitted. The proposed extension is all taken from Blythe township, and amounts to about 630 acres or thereabouts, and yields in school taxes about $400, and in road taxes about $500 yearly to this township. As there are no inhabitants upon the proposed extension, no additional scholars need be provided for and no new school houses built. The school tax would therefore be just so much clear gain to Middleport and necessarily so much clear loss to Blythe. The expense of keeping the roads within the addition would amount to about one hundred dollars per year, according to the testimony, which would cause a clear loss to Blythe of about four hundred dollars in the matter of road tax. The gain to Middleport would not be correspondingly great, because while the road tax in Blythe is as high as fifteen or sixteen mills, in Middleport it is not more than six or seven mills, so that it becomes evident that whatever Middleport gains by the extension, Blythe must lose. But it is evident from the testimony that the burdens of taxation in Blythe are much more severe than they are in Middleport. Why, then, should we lighten those of Middleport by imposing heavier ones upon Blythe? The testimony shows that in Blythe township the school tax is fifteen mills this year, and that it was sixteen mills last year, and that the road tax is about the same, making together about thirty-one mills on the dollar for these two taxes. While in Middleport the school tax was last year eighteen mills and the road tax seven mills, making together twenty-five mills; a difference in favor of Middleport of six mills. Would it be just to make the difference still greater by enlarging the borough limits? For the present year in an-

ticipation of the proposed extension, the school tax for Middleport is.
thirteen mills and the road tax six mills, together nineteen mills. What
additional tax Blythe must impose in order to make up for this loss of ter-
ritory may be conjectured. Blythe township is not in a position to stand
the loss of any of its territory. Its indebtedness for road purposes is large,
and its taxation burdensome. It is charged that the taxes collected for
road purposes in Blythe are improperly squandered, and that its affairs are
misgoverned. It may well be that a change of system is required for the
purpose of administering its affairs economically and prudently. But by
the present plan we correct no abuse. The only effect would be to relieve
one class at the expense of another.

The only other reason assigned for the extension is that the roads in
the same are and have been continually in bad repair, and that the borough
of Middleport would keep them in good repair on account of their greater
interest in doing so. It may be true, but it is at best mere conjecture,.
and is certainly no sufficient reason for extending the limits. The legal
obligation in Blythe to keep these roads in repair is as great as it would
be in Middleport, and if the township fails to do its duty in this regard,
the remedies are the same as in all other like cases, and to them we must
refer all complaints. For these reasons we think that the report of the
grand jury ought not to be confirmed by the Court.

Report of grand jury not confirmed.

# In the Court of Quarter Sessions of Schuylkill County.

The Court of Quarter Sessions may lay out a new road over part of an old road
already laid out and opened.—West Chester Road, 2 Rawle 422, Gibson, C. J.

When notice of a view is required to be given to the Town Clerk by the rule of
Court, the attendance of the members of the Borough Council at the time of the view, is a
waiver of notice.

The acts of Assembly of 18 April, 1867 and 21 April, 1870, relative to the Criminal
Court of Dauphin, Lebanon, and Schuylkill Counties, do not divest the Court of Quarter
Sessions of its jurisdiction in road cases.